1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11      VICKIE ANN JACKSON,                           No.  2:19-cv-00033-KJM-KJN PS

12                      Plaintiff,

13              v.                                    ORDER AND FINDINGS AND
                                                      RECOMMENDATIONS
14      FIDELITY NATIONAL TITLE
        COMPANY,

15
                        Defendant.
16

17

18              Plaintiff Vickie Ann Jackson, who proceeds without counsel, filed this action on January

19      4, 2019, and paid the filing fee.[1]  (ECF No. 1.)  Presently pending before the court is defendant's

20      motion to dismiss plaintiff's complaint.  (ECF No. 9)  Plaintiff filed an opposition, and defendant

21      replied.  (ECF Nos. 12, 14).  This matter came on regularly for hearing on May 16, 2019, at 10:00

22      a.m.  At the hearing, plaintiff Vickie Ann Jackson appeared on her own behalf.  Britney Noelle

23      Torres appeared on behalf of defendant.

24              After carefully considering the parties' briefing, the oral argument at the hearing, and the

25      applicable law, the undersigned recommends that defendant's motion to dismiss be GRANTED

26      and plaintiff's complaint be DISMISSED WITH PREJUDICE.

27      ─────────────────────

28      [1] This case proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28 U.S.C.
        § 636(b)(1).

                                                      1

1    I.    BACKGROUND

2          Plaintiff brings one cause of action for alleged racial discrimination against defendant

3    Fidelity National Title Company.  (See generally ECF No. 1.)  Plaintiff is a licensed real estate

4    agent and an African American.  (Id. at 2, 5.)  On or around May 2008, defendant's former

5    employee Becky Larson allegedly informed plaintiff that plaintiff was "blackballed" as a result of

6    an association plaintiff had with Clarence Rowland and the company Restorelution Solutions.

7    (Id. at 2.)  Ten years later, on May 15, 2018, plaintiff attempted to submit an escrow to defendant,

8    and defendant declined to issue title insurance.  (Id. at 3.)

9          Rowland is purportedly "incarcerated and is awaiting trial and sentencing in Federal Court

10   for forgery and [] real estate fraud matters."  (ECF No. 1 at 4.)  Plaintiff admits that she hired

11   Rowland and Restorelution Solutions "to help her save her home from foreclosure when the

12   housing market crashed."  (Id.)  However, defendant's former white employee, Larson allegedly

13   hired Rowland and Restorelution Solution for the same reason that plaintiff did so.  (Id. at 4-5.)

14   Because defendant did not fire or discipline Larson, plaintiff "can only surmise that she is being

15   discriminated against based on the color of her skin."  (ECF No. 1 at 5.)

16         Plaintiff seeks an injunction against defendant to prevent further discrimination and a

17   monetary award of $100,000.00.  (ECF No. 1 at 8.)  However, plaintiff does not cite to any legal

18   authority in the complaint.  Liberally construed, it appears that plaintiff may be attempting to state

19   a claim of racial discrimination under either 42 U.S.C. sections 1981 or 1983.

20         At the hearing in this matter, plaintiff admitted that she avoided submitting escrows to

21   defendant after receiving the notice in 2008.  She also indicated that when she did submit escrows

22   to defendant after 2008, they would be declined without explanation.  Plaintiff further conceded

23   that she does not actually know why defendant continues to decline escrows from her.

24         Plaintiff indicated that she is not a litigious person and she avoided filing suit earlier,

25   because she was able to do business with other title companies.  However, as a top real estate

26   agent, plaintiff cannot always avoid defendant, and plaintiff has grown increasingly frustrated

27   with defendant's conduct and lack of explanation.

28   ////

                                                    2

II.     LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071.  The court must construe a *pro se* pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe *pro se* filings liberally even when evaluating them under the standard announced in Iqbal).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and

3

matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

III.     DISCUSSION

Plaintiff failed to identify any legal basis for her claim of alleged racial discrimination. (See generally ECF No. 1.) In its motion to dismiss, defendant suggests that plaintiff may be asserting claims "under Section 1981's right-to-contract clause, Section 1981's full-and-equal-benefit clause, or Section 1983." (ECF No. 9 at 5.) In her opposition brief, plaintiff seems to concede that she has failed to state any claim, as she requests leave to amend under 42 U.S.C. section 1981's right-to-contract clause. (ECF No. 12 at 4.)

A.     Failure to State a Claim

Fundamentally, plaintiff's complaint fails to state a short and plain statement of any claim that is plausible on its face, showing that plaintiff is entitled to relief. See Fed. R. Civ. P. 8(a)(2). The complaint does not include sufficient factual allegations to allow the court to draw a reasonable inference that defendant is liable for racial discrimination, under any cognizable theory. See Iqbal, 556 U.S. at 678;

Plaintiff indicates that she "can only *surmise* that she is being discriminated against based on the color of her skin." (ECF No. 1 at 5 (emphasis added).) Additionally, plaintiff admits that she contracted with Rowland, an individual accused of real estate fraud, and that plaintiff received notice in 2008, that this relationship with Rowland was the reason defendant "blackballed" plaintiff. (Id. at 3-4.)

The only factual assertion plaintiff makes in support of the alleged racial discrimination is that Larson, a white former employee of defendant, received preferential treatment. Allegedly Larson also hired Rowland, but Larson was not disciplined by defendant. (Id. at 4-5.) It is far

4

1    from clear that this is an appropriate comparison, even liberally construing the complaint.

2    Plaintiff admitted at the hearing that she was never an employee of defendant, unlike Larson.

3    Thus, plaintiff and Larson are not similarly situated individuals vis-à-vis defendant.

4         Moreover, plaintiff indicates that she was initially "blackballed" in 2008, but that

5    defendant denied an escrow she submitted on May 15, 2018, without explanation.  (ECF No. 1 at

6    3-4.)  Plaintiff does not plead any facts to support a reasonable inference that such lack of

7    explanation plausibly indicates racial discrimination, under any cognizable theory.

8         B.    Leave to Amend not Warranted

9         Because plaintiff has failed to state a claim, the only question left is whether plaintiff

10   could state a claim, if granted leave to amend.  As explained, it appears that plaintiff seeks to state

11   a claim of racial discrimination under either 42 U.S.C. sections 1981 or 1983.  (See ECF Nos. 9,

12   12.)  However, as defendant persuasively argues, leave to amend would be futile for several

13   reasons.  (See ECF No. 9.)

14             1.    *Statute of Limitations*

15        Primarily, as defendant points out, plaintiff's claims are barred by the statute of

16   limitations.  (ECF No. 9 at 7-8.)  Any claim plaintiff seeks to bring under section 1981 is subject

17   to either a two or four year statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., 541

18   U.S. 369, 371, (2004) (explaining that a section 1981 claim is either governed by the federal four

19   year "catch all" statute of limitations, or by the personal injury statute of limitations of the forum

20   State, depending on whether the protected right existed prior to the 1991 amendments to the Civil

21   Rights Act); Cal. Civ. Proc. Code §335.1 (indicating that personal injury claims in California are

22   subject to a two year statute of limitations).

23        Any claim plaintiff seeks to bring under section 1983 is subject to a two year statute of

24   limitations.  See Lukovsky v. City & Cty. of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008)

25   (explaining that for claims under section 1983, which "does not include its own statute of

26   limitations, federal courts borrow the forum state's limitations period for personal injury torts");

27   Cal. Civ. Proc. Code §335.1.

28   ////

1   Under both sections, the statute of limitations begins to run "when the plaintiff knows or

2   has reason to know of the injury which is the basis of the action." Olsen v. Idaho State Bd. of

3   Med., 363 F.3d 916, 926 (9th Cir. 2004); see Lukovsky, 535 F.3d at 1048 ("Although California

4   law determines the length of the limitations period, federal law determines when a civil rights

5   claim accrues").

6       Here, plaintiff admits that she was notified that she was "blackballed" in 2008. (ECF No.

7   1 at 2.) Thus, plaintiff knew of of her alleged injury in 2008, well over four years before January

8   4, 2019, when plaintiff filed this action in federal court. At the hearing, plaintiff was unable to

9   provide any basis for tolling the statute of limitations in this matter. She admitted that she simply

10  did business with other title companies and avoided submitting escrows to defendant, after she

11  was put on notice in 2008. She also indicated that any escrow she submitted to defendant, after

12  she was put on notice in 2008, was denied.

13      Therefore, any claim plaintiff seeks to bring is time-barred. Even assuming, for the sake

14  of argument, that such claims are not time-barred, leave to amend would be futile.

15              2.      *State Action*

16      "Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or

17  immunities secured by the Constitution and laws.'" Golden State Transit Corp. v. City of Los

18  Angeles, 493 U.S. 103, 105 (1989) (citing 42 U.S.C. § 1983).

19      A claim under section 1983 generally does not lie against a private individual or business

20  entity that does not act under color of state law. See Franklin v. Fox, 312 F.3d 423, 444 (9th Cir.

21  2002). Still, a private individual's action can amount to state action under certain circumstances.

22  See Franklin, 312 F.3d at 445 (outlining four potential tests: (1) the public function test, (2) the

23  joint action test, (3) the state compulsion test, or (4) the governmental nexus test).

24      Here, plaintiff failed to plead how defendant's conduct constitutes state action under

25  section 1983, and there is no indication that plaintiff could do so if given leave to amend.

26  Defendant is a private title company. There is nothing to suggest that the issuance of title

27  insurance as part of a private real estate transaction—the action at issue here (see ECF No. 1 at

28  3)—could constitute state action in any way. Nor does plaintiff indicate in either the complaint or

6

1    her opposition that the underlying facts in this matter somehow involve a governmental actor,

2    entity, or scheme.  Indeed, plaintiff appears to abandon any claim under section 1983, as plaintiff

3    only requests leave to amend under section 1981's right-to-contract clause.  (See ECF No. 12 at

4    4.)

5                              3.       *Right-to-contract*

6          Unlike section 1983, "the prohibitions of § 1981 encompass private as well as

7    governmental action."  Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 387-88,

8    (1982).  Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall

9    have the same right in every State and Territory to make and enforce contracts, to sue, be parties,

10   give evidence, and to the full and equal benefit of all laws and proceedings for the security of

11   persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).

12         To state a prima facie claim under section 1981's right-to-contract clause, a plaintiff must

13   demonstrate that: "(1) [she] is a member of a protected class, (2) [she] attempted to contract for

14   certain services, and (3) [she] was denied the right to contract for those services."  Lindsey v.

15   SLT Los Angeles, LLC, 447 F.3d 1138, 1145 (9th Cir. 2006).

16         As the Supreme Court has explained, however, "[t]he right to 'make contracts' guaranteed

17   by the statute was not the insignificant right to act as an agent for someone else's contracting. . . .

18   Rather, it was the right—denied in some States to blacks, as it was denied at common law to

19   children—to give and receive *contractual rights* on one's own behalf."  Domino's Pizza, Inc. v.

20   McDonald, 546 U.S. 470, 475 (2006) (emphasis in original).  Accordingly, "a plaintiff cannot

21   state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed)

22   contract that he wishes 'to make and enforce.'  Section 1981 plaintiffs must identify injuries

23   flowing from a racially motivated breach of their own contractual relationship, not of someone

24   else's."  Id. at 479-80.

25         Here, the escrow plaintiff submitted was on behalf of her client, who was attempting to

26   enter into a contractual relationship with defendant, in order to obtain title insurance for a real

27   estate transaction.  Any contractual rights flowing from this relationship would have belonged to

28   plaintiff's client and and not to plaintiff.  Plaintiff was merely acting as her client's agent.

                                              7

1    Thus, even if plaintiff's claims were not time-barred, plaintiff could not state a claim

2    under section 1981's right-to-contract clause, because the refusal of the escrow did not affect any

3    potential contractual rights of plaintiff's own.  See McDonald, 546 U.S. at 475-80.

4              4.    *Full-and-equal-benefit*

5         As to section 1981's full-and-equal-benefit clause, courts have observed that "[b]ecause

6    the state is the sole source of the law, it is only the state that can deny the full and equal benefit of

7    the law." Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001) (citing

8    Chapman v. Higbee Co., 256 F.3d 416, 2001 WL 753504, *3 (6th Cir. July 5, 2001)).  As such,

9    "the concept of state action is implicit in the [full and] equal benefit clause." Mahone v. Waddle,

10   564 F.2d 1018, 1029 (3d Cir. 1977) cert. denied, 438 U.S. 904 (1978).  To invoke the clause, a

11   plaintiff "ha[s] to allege that some sort of state action contributed to her being discriminated

12   against." Bediako v. Stein Mart, Inc., 354 F.3d 835, 838 n.3 (8th Cir. 2004).  Yet, as explained,

13   plaintiff cannot demonstrate that defendant is a state actor in this matter.

14   IV.    CONCLUSION

15        The court is not unsympathetic to plaintiff's desire to know definitively why defendant

16   refuses to do business with her.  However, plaintiff's understandable desire does not create a

17   federal cause of action.  Based on the foregoing, plaintiff has failed to state a claim and leave to

18   amend would be futile.

19        Accordingly, IT IS HEREBY RECOMMENDED that:

20        1.  Defendant's motion to dismiss (ECF No. 9) be GRANTED.

21        2.  Plaintiff's complaint be DISMISSED WITH PREJUDICE.

22        3.  The Clerk of Court be ordered to close this case.

23        In light of these recommendations, IT IS ALSO HEREBY ORDERED that all pleading,

24   discovery, and motion practice in this action are STAYED pending resolution of the findings and

25   recommendations. With the exception of objections to the findings and recommendations and any

26   non-frivolous motions for emergency relief, the court will not entertain or respond to any motions

27   and other filings until the findings and recommendations are resolved.

28        These findings and recommendations are submitted to the United States District Judge

8

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

shall be served on all parties and filed with the court within fourteen (14) days after service of the

objections. The parties are advised that failure to file objections within the specified time may

waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th

Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

     IT IS SO ORDERED AND RECOMMENDED.

Dated: May 20, 2019

_____

KENDALL J. NEWMAN

UNITED STATES MAGISTRATE JUDGE

Jackson.00033.F&R MTD